UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  08-CV-60760-COHN/SELTZER

STATE NATIONAL INSURANCE COMPANY,

      Plaintiff,

vs.

AL LAMBERTI, in his official capacity as
Sheriff of Broward County, Florida, and
BROWARD COUNTY SHERIFF'S OFFICE,

      Defendants,

_____/

SHERIFF AL LAMBERTI, in his official capacity
as Sheriff of Broward County, Florida,

      Counter-Plaintiff,

vs.

STATE NATIONAL INSURANCE COMPANY,

      Counter-Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion for Partial Summary

Judgment [DE 38] and Plaintiff's Motion for Summary Judgment [DE 39].  The Court has

carefully considered the motions, the parties' responses [DE's 53 and 55] and replies

thereto [DE's 61 and 62], the entire record of exhibits and statements of undisputed

facts, and the argument of counsel at a hearing held on March 13, 2009.

I.  PROCEDURAL BACKGROUND

This case involves an insurance coverage dispute between Al Lamberti, as Sheriff for the Broward Sheriff's Office ("BSO" or "Defendant") and its liability insurance carrier, State National Insurance Company ("State National" or "Plaintiff").  State National brought this declaratory judgment action for a determination that its insurance contracts with BSO are for excess coverage only and that BSO has a Self-Insured Retention ("SIR") as to each of the claims against BSO deputies arising out of their actions against demonstrators at the Free Trade of the Americas meetings ("FTAA") in 2003.  In addition, State National seeks a declaration that all FTAA claims resulted from more than one occurrence under the policy, as different actions taken by different officers at different times involved different immediate causes of injury.

BSO filed a counterclaim for declaratory judgment, breach of contract, and specific performance, seeking the Court to declare that the SIR does not apply to the Personal Injury Liability Coverage Applicable to Police/Peace Officers Only ("PILPPO"), which covers claims made due to police officers' "offenses" of false arrest, malicious prosecution, assault and battery, etc., or, in the alternative, that only one SIR applies to all claims falling within the coverage provided and arising out of the FTAA incidents. After a period of discovery, both sides moved for summary judgment.  Many undisputed facts can be gleaned from the record at this stage.

II.  FACTUAL BACKGROUND

**A.  The Policy**

A series of five (5) one-year insurance contracts comprise the parties' agreements.  The first page of the policy after the title page (which merely contains the

2

company name), contains a Declarations page entitled "Public Entity Excess Liability Policy Declarations." [DE 39-2 at p. 3; 39-3 at p. 4, 39-4 at p.2, etc].[1]  The only change in these policies is that the SIR increases from $300,000 per occurrence to $500,000 per occurrence in the 2004-2005 year and each year thereafter.  The limit on State National's excess exposure for each accident or occurrence is $5 million, while the Policy Aggregate Limit is $10 million.

The Declarations page states that "Only a Coverage Form marked below with an 'X' is part of this policy on its effective date."  The only boxes checked are those for "Excess General Liability" and "Excess Automobile #1 Any Auto."  Following the Declarations page is a page entitled "Public Entity Excess Liability Forms" containing a list of various forms in the policy, including the PILPPO coverage and the SIR Endorsement.

The form at the center of this litigation is "SNS 1006," entitled Personal Injury Liability Coverage.  This is a two page form with the full title of Personal Injury Liability Coverage Applicable to Police/Peace Officers ("PILPPO").[2]  Form SNS 1006 does not mention the SIR and states that "We will pay on your behalf of the insured all sums which the insured shall become legally obligated to pay as damages. . . ." [DE 39-2 at p. 37 (Bates Stamp EX-A-36)].  The damages covered are those sustained by any person arising out of "one or more of the following offenses committed in the conduct of the

---

[1]  The Court will reference page numbers from only the 2003-2004 policy [DE 39-2].  The policies from the following years contained the same forms and policy language.

[2]  State National repeatedly refers to this coverage in its briefs as "Law Enforcement Endorsement" or "LE," while BSO refers to it as PILPPO coverage.

named insured's business: [list of police offenses follows, such as false arrest, malicious prosecution, etc.]." This coverage states that "the total limit of the company's liability under this coverage for all damages shall not exceed the limit of liability stated in the policy." No actual dollar limit amounts are stated on the two pages of the PILPPO coverage.

The other important form in this dispute is "SNS 1010," the SIR Endorsement, which explains the self-insured retention required before the excess policy can be invoked for coverage. The SIR form states that "this endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part and Commercial Automobile Coverage Part." The SIR page does not mention the PILPPO coverage.

### B.  The FTAA Claims

In April of 2008, BSO made claims under the policy relating to lawsuits against BSO deputies for their actions in arresting demonstrators protesting the FTAA meetings in Miami, Florida. These claims were the first time BSO took the position that the SIR did not apply to PILPPO coverage. BSO also took the position that all of the FTAA claims were one "occurrence" under the policies. State National then filed this declaratory action.

Although both parties argue that the Court can rule as a matter of law on the meaning of the unambiguous policy language, State National also cites to extrinsic evidence to prove the parties' intent, while BSO cites to other evidence to negate Plaintiff's arguments. State National asserts the parties' course of performance from negotiation of the policy in 2003 through April of 2008 was all predicated on the

4

coverage being excess only.  State National has evidence from BSO's claims handlers, whose communications up until April of 2008 referred to reaching the $300,000 (or $500,000) SIR limit, and who never made claims for amounts below that retention prior to April of 2008.  State National also puts forth evidence of the parties' intent in negotiating the initial insurance binder and policy agreements that BSO's broker/agents all believed the coverage was excess only.  State National Motion for Summary Judgment [DE 39 at pp. 20-25].

BSO asserts that the evidence presented by State National in its initial brief is explained away because the BSO claims representatives did not understand and lacked knowledge of the meaning of the insurance coverage language.  BSO asserts that the course of performance changed in April of 2008 and that it is no longer undisputed that all the parties believed the SIR did not apply during the coverage period.

III.  DISCUSSION -- APPLICATION OF SIR TO PILPPO

## A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

5

After the movant has met its burden under Rule 56©, the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Electronic Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50.

### B.  State National's Arguments

State National argues that the policies must be read as a whole with the PILPPO coverage as part of the General Liability coverage.  Under this interpretation, the policy is clearly an excess coverage only policy, with each claim or lawsuit against BSO arising out of personal injury caused by police officers subject to a separate SIR.  State National argues that the PILPPO coverage cannot stand by itself, as it contains no

6

declarations, policy premium or conditions required to be part of an insurance policy, all of which are part of the General Liability coverage [DE 39-2 at pp. 16-27].  The PILPPO coverage itself states that the premium for this coverage is "included" in the overall policy.  The coverage includes "Additional Definitions," meaning the regular definitions are included elsewhere, such as the General Liability coverage [DE 39-2 at pp. 24-27]. The PILPPO coverage also refers back to the overall limit of liability, meaning it must be read in the context of an excess policy and be subject to the SIR on the Declarations Page.

As a fallback to its plain language argument, if the Court found the policy language ambiguous, State National urges the Court to view the extrinsic evidence noted above to interpret the parties' intent that the coverage was excess only.  It is true that this evidence of course of performance and the actions of BSO's internal claims adjusters and outside insurance agents all indicate that everyone involved believed and acted from October of 2003 through April of 2008 that the coverage was excess only as to all coverages, including the PILPPO coverage.

## C.  BSO's Arguments

BSO makes the simple argument that the plain language of the Declarations Page, the SIR endorsement, and the PILPPO coverage mean that no SIR applies to this coverage.  The Declarations page and SIR endorsement do not mention PILPPO coverage, but only General Liability and Automobile coverage.  The PILPPO coverage does not mention that it is subject to the SIR endorsement.

BSO then goes on to challenge State National's argument that the PILPPO coverage must be read as part of the General Liability coverage.  It is true that there is nothing specific stated in the policy that the PILPPO coverage is part of the General Liability coverage.  BSO argues that the fact that a senior officer of State National testified that not all municipalities purchase the PILPPO coverage means that there is a separate premium attributable to the PILPPO coverage.  It attributes the notation that the premium is "included," as one of convenience to simply list the total premium on the Declarations page.

BSO also argues from the policy language that every other endorsement in this policy states that it modifies other coverage in the policy.  See e.g., mold coverage in "Limited Fungi or Bacteria Coverage" [DE 39-2, p. 29 or EX-A-28].  Because the PILPPO coverage does not so state that it modifies other coverage, BSO asserts that such omission is further evidence that the PILPPO coverage stands by itself.

Finally, BSO argues that because PILPPO covers "offenses" by police officers that cause injury, the "occurrence" based General Liability coverage cannot be part of the PILPPO analysis.  "Occurrence" is defined in the General Liability coverage as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  General Liability § 5, ¶ 9 [p. 26 of DE 39-2].  BSO asserts that because PILPPO covers "offenses," which are intentional torts, it is not part of either the General Liability coverage, nor the similarly occurrence-based SIR endorsement.[3]

---

[3]  The Additional Definition of "Damages" in the PILPPO coverage could be read to enlarge the definition of "personal injury" in the General Liability section, which in turn does speak of "offenses." General Liability § 5, ¶ 10 [p. 26 of DE 39-2]  Thus, there does appear to be a link between occurrence and offenses within the policy.

8

## D.  Caselaw and Interpretation of the Policy

"[E]very insurance contract shall be construed according to the entirety of its

terms and conditions as set forth in the policy and as amplified, extended, or modified

by any application therefor or any rider or endorsement thereto."  First Professionals

Inc. Co. v. McKinney, 973 So.2d 510, 514 (Fla.Dist.Ct.App. 2007), quoting Fla. Stat.

§ 627.419(1).  A "single policy provision should not be considered in isolation, but

rather, the contract shall be construed according to the entirety of its terms as set forth

in the policy. . . ."  General Star Indem. Co. v. West Florida Village Inn, Inc., 874 So.2d

26, 30 (Fla.Dist.Ct.App. 2004), citing Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,  845

So.2d 161, 166 (Fla. 2003).

Applying these general principles to this case, the Court cannot isolate the

PILPPO coverage from the fact that the policy as a whole is clearly an excess coverage

policy.  The PILPPO coverage must be read in conjunction with the Declarations Page,

the Forms page, the SIR endorsement and the General Liability Coverage.  The Court

concludes that the plain language of the policy as a whole leads to only one conclusion:

the PILPPO coverage is subject to the SIR endorsement.[4]

The Declaration and Forms pages at the beginning of the parties' contract are

dispositive on their face that the policy is for excess liability coverage.  The very title of

the Declarations page states "Public Entity Excess Liability Policy Declarations," with

---

[4]  The Court recognizes that the policy would certainly be clearer if the SIR
endorsement specifically included the PILPPO coverage, and vice versa, something
State National could have done.  However, this observation does not lead to the
conclusion that the policy before the Court is ambiguous and therefore must be
construed against its drafter.  State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d
1245, 1248 (Fla. 1986).

this page describing the SIR amount.  The very next page listing the included forms is

entitled "Public Entity Excess Liability Forms," and includes the PILPPO coverage, form

SNS 1006.  The PILPPO coverage itself, as State National argues, does not contain

declarations, conditions or any limits, though it refers to liability limits.  The PILPPO

must be read to be part of the entire policy, with the SIR stated in the Declarations page

applicable to the PILPPO coverage.

Although BSO has made an interesting argument in this case, such argument

does not mean that BSO's interpretation is reasonable.  "An insurance contract is

deemed ambiguous if it is susceptible to two or more reasonable interpretations that can

fairly be made."  Continental Cas. Co. v. Wendt, 205 F.3d 1258, 1261 -1262 (11th Cir.

2000).  In this case, the Court concludes that the policy is not ambiguous.  State

National is entitled to a declaratory judgment that its insurance contracts with BSO are

for excess coverage only and that BSO has a SIR as to each of the claims against BSO

deputies.

### E.  Alternative Evidence of Intent[5]

In the alternative, if BSO's interpretation is deemed reasonable, then the policy

language is ambiguous.  State National asserts that a court must not automatically

construe the contract against the draftor if there is extrinsic evidence as to the meaning

of the terms.  DSL Internet Corp. v. TigerDirect, Inc., 907 So.2d 1203, 1205

(Fla.Dist.Ct.App. 2005).   The Fourth District Court of Appeal recently cited DSL Internet

---

[5]  Because the parties have engaged in discovery and fully briefed the issue, the
Court will rule in the alternative, mindful that extrinsic evidence cannot be used to vary
the terms of the contract if the contract is not ambiguous.  Frulla v. CRA Holdings, Inc.,
543 F.3d 1247, 1252 (11th Cir. 2008).

with approval by stating that "the rule of adverse construction is a 'secondary rule of interpretation' or a 'rule of last resort,' which should not be utilized if the parties' intent can otherwise be conclusively determined." <u>Emerald Pointe Property Owners' Ass'n, Inc. v. Commercial Const. Industries, Inc</u>., 978 So.2d 873, 878, n.1 (Fla.Dist.Ct.App. 2008).  BSO, in addition to relying on the case law regarding construing the policy against the insurer, cites to caselaw that a court should not redraft the contract and should not rely on the reasonable expectations of the parties.  <u>Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Ins. Co</u>., 711 So.2d 1135, 1140 (Fla. 1998).

The Court agrees with State National that if the policy is ambiguous, the Court will look to extrinsic evidence of the parties' intent in forming the contract and course of performance.  <u>Arriaga v. Florida Pacific Farms, L.L.C.</u>, 305 F.3d 1228, 1247 (11th Cir. 2002).[6]  In that regard, State National has presented significant evidence that both it and BSO intended to contract for excess coverage, including only excess coverage as to PILPPO claims.  For example, the offer letter dated September 19, 2003  to BSO's agent Leo Sastre of AON Risk Services from Plaintiff's subsidiary included the "LE" coverage (another term for the PILPPO coverage) as subject to the SIR.  Exhibit P to Plaintiff's Motion [DE 39-19].  Two years later during renewal communications, BSO's new insurance agent, Marsh USA, Inc., presented a chart to BSO of their 2003-04, 2004-05 (expiring) and 2005-2006 (proposed) coverages which indicated that the Self Insured Retention applies to all coverages including the Law Enforcement/PILPPO coverage.  Exhibit V to Plaintiff's Motion [DE 39-25].  This clear understanding of BSO's

---

[6] The Court acknowledges that <u>Arriaga</u>, <u>DSL Internet</u>, and <u>Emerald Pointe</u> are not insurance cases.

insurance agents may be attributed to BSO.  Almerico v. RLI Ins. Co., 716 So.2d 774, 776 (Fla. 1998); Amstar Ins. Co. v. Cadet, 862 So.2d 736, 739-40 (Fla.Dist.Ct.App. 2003).

        In looking at BSO's intent through its course of performance, BSO's own Standard Operating Procedures of its Division of Risk Management has instructions for notifying insurance carriers when a SIR threshold is approaching.  Exhibit J to Plaintiff's Motion, ¶ 3.6 [DE 39-13].   This procedure was followed when claims adjustors sent claim notices to State National's claims administrator, Meadowbrook, that posed a potential exposure "exceeding our S.I.R.."  Exhibits K [DE 39-14] and L [DE 39-15].  BSO's attempt to minimize this conduct by saying that its notice in April of 2008 to Plaintiff vitiated any prior uninformed understandings of BSO's own claims adjustors is simply a post-hoc rationalization of this evidence of course of performance that BSO was operating for four and one half years under the belief that a SIR applied to PILPPO claims.  This evidence supports the other extrinsic evidence from the time of contract formation that a SIR applied to PILPPO claims.

        The Court therefore concludes that even if the contract language is ambiguous, the undisputed extrinsic evidence in the record shows that the parties intended the SIR to apply to PILPPO claims.

## IV.  DISCUSSION -- SINGLE OR MULTIPLE OCCURRENCES

        A separate issue that is fully presented to the Court upon the cross motions for summary judgment is whether the FTAA claims are all one "occurrence," and subject to just one SIR, or whether each FTAA claim and/or injury is a separate occurrence.  State National seeks a declaratory judgment that the FTAA claims constitute more than

one occurrence under the policy, while BSO seeks a judgment that only one SIR applies to all claims falling within the coverage provided and arising out of the FTAA incidents.

State National relies upon <u>Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.</u>, 420 F.3d 1317, 1332 (11th Cir. 2005), for the proposition that each occurrence is based upon the event and not on the injuries.  Thus, State National wishes this Court to determine that injuries caused by the same police officer on the same victim by assault, false arrest and malicious prosecution would be three separate occurrences for the three separate events.  In <u>Guideone Elite</u>, the Court, interpreting the same definition of "occurrence" that exists in the policies in question, determined that general liability coverage for a victim's sexual assault occurring on the insured's property would have separate occurrences for rape, robbery, kidnapping and assault of the same victim.

The Eleventh Circuit relied upon the Florida Supreme Court decision in <u>Koikos v. Travelers Ins. Co.</u>, 849 So.2d 263, 268-271 (Fla. 2003), another negligent security case in which the Court held that it is the act that causes the damage (the shots fired by the aggressor) which is unexpected from the insured's standpoint, rather than the underlying negligence of failing to provide security, that is the occurrence under the policy.  State National argues that each act by each deputy sheriff that caused damage is a separate occurrence, rather than any overarching policy decision by BSO regarding treatment of FTAA demonstrators.

BSO asserts that these cases did not interpret the term "offenses" as used in the PILPPO coverage, so they do not apply to this "occurrence" analysis.  As determined in the prior section, however, the PILPPO coverage is subject to the SIR, so the PILPPO

13

covered "offenses" must be harmonized with the SIR's per "occurrence" language.  BSO

argues that this issue is a question of fact, depending upon how the different individuals

were arrested (individually or in a group, i.e. "mass arrest") and how they were injured.

The PILPPO coverage states:

> We will pay on your behalf of the insured all sums which the insured
> shall become legally obligated to pay as damages because of injury
> (herein called "personal injury") sustained by any person or
> organization and arising out of one or more of the following offenses
> committed in the conduct of the named insured's business:

The listed "offenses" are set off in four "Groups," and include offenses such as false

arrest, malicious prosecution, false imprisonment, etc.  The Declarations page simply

states that the SIR is $300,000 per occurrence, with "occurrence" being defined in the

General Liability coverage as "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions."  Exhibit A at p. 26 (EX-A-25) [DE 39-

2].

In applying the Guideone and Koikos decisions, the Court can easily determine

that the FTAA claims constitute more than one occurrence.  Exactly how many

occurrences is a more difficult question.  In some instances, State National is correct that

a victim who was the subject of battery and false arrest from a deputy likely suffered from

two distinct causes (the initial act of the battery and the separate act of arrest), while in

others instances it is possible that the same act of arrest resulted in multiple causes of

action against BSO (i.e. a mass arrest).  In the latter instance, it may be that a single

offense can result in multiple individuals suffering similar damages at the same time from

14

the same actor.[7]  However, based upon the parties' pleadings (though not necessarily their briefs) the Court is not being asked to resolve that question at this time.

IV.  CONCLUSION

The Court determines that State National is entitled to summary judgment in its favor on its claims and against BSO on the counterclaims.  The Court will issue a declaratory judgment that BSO has a Self-Insured Retention as to each of the claims against BSO deputies arising out of their actions against demonstrators at the FTAA meetings and that all FTAA claims resulted from more than one occurrence under the policy.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     Defendant's Motion for Partial Summary Judgment [DE 38] is hereby **DENIED**;

2.     Plaintiff's Motion for Summary Judgment [DE 39] is hereby **GRANTED**;

3.     The Court will separately enter a declaratory judgment in favor of Plaintiff.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 20th day of March, 2009.

JAMES I. COHN
United States District Judge

copies to:

Counsel of record on CM/ECF

---

[7]  State National has taken the position that the policy's SIR language of "per occurrence" distinguishes the policy from a "claims made" policy, where each individual claimant would be deemed to have one claim, regardless of the number of causes of action.

15